**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JAMES COPLEY,

                Plaintiff,

v.                                                CIVIL ACTION NO. 2:11-cv-00416

UNITED STATES DEPARTMENT
OF ENERGY, NETL, et al.

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the United States's motion to dismiss [Docket 3] and the plaintiff's motion to remand [Docket 6]. This action was referred to the Honorable Mary E. Stanley, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Stanley has submitted her PF&R and recommended that the Court grant the motion to dismiss. On September 29, 2011, the plaintiff filed timely objections to the PF&R. (Docket 11.) For the reasons that follow, the PF&R is **ADOPTED** only to the extent it recommends dismissal; the plaintiff's motion to remand [Docket 6] is **DENIED**; and the government's motion to dismiss [Docket 3] is **GRANTED**.

*I. FACTUAL BACKGROUND & PROCEDURAL HISTORY*

Plaintiff James Copley filed the complaint in this action against the "United States Department of Energy, NETL" on April 26, 2011, in the Circuit Court of Kanawha County, West Virginia. (Docket 1-1 at 4.) Although the bulk of the complaint is devoted to reciting verbatim state and federal statutory

and case law that Plaintiff believes supports his cause of action, he never expressly identifies any cause of action. Nonetheless, due in part to the fact that the United States did not challenge the factual sufficiency of the complaint, the Court infers that Plaintiff intended to plead a case of age discrimination against the National Energy Technology Laboratory ("NETL"), a former employer of Plaintiff, which is owned and operated by the United States Department of Energy ("DOE").

The complaint alleges that Plaintiff "was a former employee of the United States Department of Energy at the Morgantown Energy Technology Center" from October 1985 through March 1990, working as an engineer. Plaintiff states that he was successful in his work and received several promotions while employed for DOE in the 1980s and 1990. He voluntarily resigned his employment to pursue an advanced degree in June 1990. Plaintiff then alleges that "[o]n or about July 2009, the plaintiff desired to return to work and applied for an advertised opening at [NETL] (formerly the Morgantown Energy Technology Center), the plaintiff's former place of employment." (Docket 1-1 at 4.) He alleges that, despite being fully qualified, he received a job refusal letter in August 2009. The remainder of the complaint recites various sections of the West Virginia Human Rights Act, Title VII of the Civil Rights Act, the Age Discrimination in Employment Act ("ADEA"), and the West Virginia Arbitration Act.

The United States, acting "on behalf of the United States Department of Energy, National Energy Technology Laboratory," removed this case from state court on June 14, 2011. (Docket 1 at 1.) In conjunction with removal, the United States filed a motion to dismiss the complaint for lack of subject matter jurisdiction. (Docket 4.) The motion argues two bases for jurisdictional deficiency: (1) Plaintiff failed to properly serve NETL; and (2) Plaintiff failed to exhaust his administrative remedies prior to filing suit. (*Id.* at 1-2.) Plaintiff filed an amended complaint and motion to remand on April 20, 2011. In that filing, Plaintiff argues that removal was untimely and that the district court lacks

subject matter jurisdiction, although he believes the state circuit court possesses jurisdiction. (Docket 6 at 1-2, 6-8.) On July 25, 2011, Plaintiff responded to the motion to dismiss. (Docket 8.) He argues that the amended complaint no longer cites to federal discrimination statutes (only the West Virginia Human Rights Act), and therefore the case is not one arising under the laws or Constitution of the United States, nor does diversity of citizenship exist. He also argues that NETL (and not DOE) is the only proper defendant to this lawsuit, and therefore jurisdiction cannot be premised on the United States being a party.

On September 12, 2011, United States Magistrate Judge Mary E. Stanley recommended that the government's motion to dismiss be granted and Plaintiff's motion to remand be denied. (Docket 10 at 7-8.) Regarding the motion to dismiss, the magistrate judge specifically found that Plaintiff failed to exhaust his administrative remedies and ineffectively served process on the United States pursuant to Rule 4(i) of the Federal Rules of Civil Procedure. Regarding Plaintiff's motion to remand, the Magistrate Judge found the government's removal both timely, since service was not accomplished in accord with Rule 4(i), and jurisdictionally proper. Objections to the Magistrate Judge's proposed findings and recommendation ("PF&R") were due on September 29, 2011. On September 29, 2011, Plaintiff filed a motion to amend his complaint, strike the PF&R, and recuse the Magistrate Judge from further consideration of his case. (Docket 11.) The United States responded on October 4, 2012. (Docket 12.)

## II. DISCUSSION

### A. Parties

There appears to be some confusion among the parties, and particularly Plaintiff, as to whether there are one or two defendants to this civil action. The complaint and summons name a single defendant: "United States Department of Energy, NETL" and "United States DOE (NETL)," respectively. (Docket 1-1 at 1, 4.) The notice of removal was filed on behalf of a single defendant: "the

3

United States Department of Energy, National Energy Technology Laboratory." (Docket 1 at 1.) The motion to dismiss was filed on behalf of "defendant United States Department of Energy, National Energy Technology Laboratory." (Docket 3 at 1.) In his amended complaint and motion to remand, Plaintiff for the first time names "United States Department of Energy" and "National Energy Technology Laboratory" as "Defendants." (Docket 6 at 1.) In that motion, most likely attempting to defeat federal jurisdiction, Plaintiff argues that NETL is not a government agency. (*Id.* at 2.) However, in his memorandum in response to the motion to dismiss, Plaintiff states that his complaint is intended to name only NETL. (Docket 8 at 6 ("[T]he specific government entity in the Plaintiff's complaint, NETL, is in West Virginia and therefore does not qualify as a foreign entity.").) The document purporting to be an amended complaint sets forth no facts regarding Plaintiff's claims. Instead, it attempts to explain the DOE's national laboratories system and argues for remand to state court, and it is therefore best considered a motion to remand and memorandum in support. Therefore, due to significant ambiguity regarding the inclusion of DOE as a separate defendant in this case, the Court will consider NETL as the sole defendant.

### B. *Plaintiff's Objections to the PF&R*

Plaintiff's objections to the PF&R are largely unresponsive to the Magistrate Judge's recommendations. The document being construed as objections to the PF&R is titled "Motion to Amend Complaint & Recuse Current Presiding Magistrate Judge Pursuant to Rule 12(f) & 12(g) and the following." (Docket 11 at 1.) As the title indicates, Plaintiff devotes a majority of this nearly-40-page document to arguing for the recusal of Magistrate Judge Stanley because she decided past cases involving Plaintiff unfavorably to him. He recites 28 U.S.C. § 455, makes tenuous due process and equal protection arguments, and generally cites a plethora of tangential case law. Plaintiff also states that he is due special treatment in this proceeding because of his physical impairments and pro se status.

Factually speaking, approximately ten pages of the document are devoted to a wikipedia definition of "government entity" and a detailed explanation of what NETL is and does. The document moves the Court for entry of judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure. Finally, Plaintiff argues that removal was untimely under 28 U.S.C. § 1446(b).

To the extent Plaintiff challenges the PF&R's recommendation regarding the timeliness of removal, that argument is addressed below. In all other respects, the objections to the PF&R are frivolous and unresponsive to the PF&R, and they will therefore not be considered. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) (court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the Magistrate Judge as to those portions of the findings or recommendation to which no objections are addressed).

*C. Motion to Remand: 30-day Rule*

Prior to reaching the merits of the government's motion to dismiss the complaint, the Court must address Plaintiff's argument that removal from state court was improper. In contrast to 28 U.S.C. § 1441, which permits removal to federal court whenever a complaint could have been brought there originally, 28 U.S.C. § 1442 authorizes removal of any civil action or criminal prosecution against the United States or its agencies or officers, provided the defendant is alleged to have acted in his or her official capacity. *See generally* 28 U.S.C. § 1442(a)(1). Thus, under § 1442, the source of a plaintiff's cause of action is irrelevant; a case may proceed in federal court as long as: (1) the defendant is an agency or officer of the federal government; (2) that was acting in the course of his or her official duties during the alleged misconduct; and (3) the state court had jurisdiction to hear the case. Although Plaintiff challenges the characterization of NETL as an agency of the federal government, the Court is satisfied that NETL falls within the purview of § 1442. In contrast to other laboratories in DOE's network of national labs, NETL "is federally owned and operated [by DOE], a departure from the contractor-operated model that is the

norm within the DOE laboratory system." *See* NETL: Mission and Overview, http://netl.doe.gov/about/mission.html (last visited March 28, 2012); *see also Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (in ruling on a motion brought pursuant to Rule 12(b), court may take judicial notice of matters of public record).

The procedure for removal by a federal agency or officer under § 1442, like all statutes authorizing removal to federal court, is governed by 28 U.S.C. § 1446. *E.g.*, *North Carolina v. Ledgester*, No. 4:11–MJ–1082, 2011 WL 2559792, at *1 (E.D.N.C. June 28, 2011) (expressly applying § 1446(c)'s 30-day removal requirement to federal officer removal under § 1442); *cf.* 28 U.S.C. § 1446(g) (applying related 30-day rule to case removable under § 1442(a) that requests judicial order for testimony or documents). Under § 1446, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." § 1446(c)(1). A case must be remanded to state court if the notice of removal is not filed within 30 days of effective service of process, provided the plaintiff moves for remand within 30 days of removal. *See* § 1447(c).

In this case, Plaintiff filed his complaint in state court on April 26, 2011. (Docket 1-1 at 4.) Plaintiff appears to have served NETL by certified mail at its Morgantown, West Virginia, facility on April 29, 2011, as evidenced by a return mail receipt and corroborated by the state court docket sheet. (Docket 6 at 10, Docket 9 at 1.) The United States, acting on behalf of NETL, removed the case to federal court on June 14, 2011, approximately 15 days after the 30-day removal window expired. Thus, if service on NETL by certified mail was effective on April 29, 2011, the Court must remand this case to state circuit court as untimely removed.

The issue of service of process was argued by the United States in its motion to dismiss. There, the government argues and Plaintiff does not refute, that neither the United States Attorney for the Southern District of West Virginia nor the Attorney General of the United States were served with the complaint as required by Federal Rule of Civil Procedure 4(i). (Docket 4 at 2.) Although this argument was accepted by the Magistrate Judge, it is unclear to the Court why the Federal Rules of Civil Procedure provide the appropriate service requirement for an action initiated in state court.

It appears that, in making its argument, the United States has overlooked the fact that the Federal Rules do not apply pre-removal. Rule 81(c) of the Federal Rules of Civil Procedure provides that "[t]hese rules apply to a civil action after it is removed from a state court." In a case procedurally similar to this one, the Eighth Circuit stated:

> It is axiomatic that state rules of civil procedure apply to state court actions, and the federal rules of civil procedure do not. For that reason alone, [Plaintiff] did not have to comply with Rule 4 of the Federal Rules of Civil Procedure when serving the [Social Security Administration] with a copy of a supplemental complaint in a state court garnishment action.

*Lang v. Social Sec. Admin.*, 612 F.3d 960, 866 (8th Cir. 2010); *see also Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 (7th Cir. 2001) ("The Federal Rules make clear that they do not apply to filings in state court, even if the case is later removed to federal court . . . . [F]ederal courts may apply state procedural rules to pre-removal conduct.") (citations omitted). Indeed, as countless decisions make clear, state procedural rules apply pre-removal. The Court perceives no reason why the involvement of the United States warrants departure from that rule. *Cf. Wilson v. U.S. Dep't of Agric.*, 584 F.2d 137, 141 (6th Cir. 1978) (holding that Secretary of Agriculture could not require state court to follow federal service rules and noting that "[t]he traditional principle of federalism is that, as long as state rules of practice do not 'impose unnecessary burdens upon rights of recovery authorized by federal laws,' neither Congress nor the federal courts has the power to change them.") (citation omitted). Accordingly, service

on NETL was proper, and therefore removal untimely, if Plaintiff served NETL in accordance with state service of process rules in April 2011.

Finding no specific provision in the West Virginia Code dealing with service of process on the federal government or its agencies, the Court turns to Rule 4 of the West Virginia Rules of Civil Procedure, which deals more broadly with service of process.  The most applicable subsection of Rule 4 appears to be (d)(7), which relates to service on foreign corporations.  Rule 4(d)(7) simply states that service may be accomplished upon a foreign corporation qualified to transact business in West Virginia "by delivering or mailing in accordance with paragraph (1) above a copy of the summons and complaint as provided in Rule 4(d)(5)."  W. Va. R. Civ. P. 4(d)(7).  Subsection (d)(5) provides:

> (d)  Personal or substitute service shall be made in the following manner:
> (5) *Domestic Private Corporation*.  Upon a domestic private corporation,
>> (A) by delivering or mailing in accordance with paragraph (1) above a copy of the summons and complaint to an officer, director, or trustee thereof; or, if no such officer, director, or trustee be found, by delivering a copy thereof to any agent of the corporation . . .; or
>> (B) by delivering or mailing in accordance with paragraph (1) above a copy thereof to any agent or attorney in fact authorized by appointment or by statute to receive or accept service in its behalf.

*Id.* R. 4(d)(5).  Rule 4(d)(1), in turn, provides that service may be accomplished by, *inter alia*, "[t]he clerk sending a copy of the summons and complaint to the individual to be served by certified mail, return receipt requested, and delivery restricted to the addressee."

The record in this case demonstrates that the circuit court clerk sent a copy of the summons and complaint to the address listed on NETL's public website for its Morgantown facility.  (Docket 6 at 10.) Return receipt was requested and received on April 29, 2011, and delivery was restricted, as evidenced by the receipt.  Someone at NETL's facility, a "D. Ayers," signed for the documents, although he failed to indicate whether he is an agent of NETL on the return receipt.  This Court has held in the past that a signed return receipt bearing the correct address for a defendant will be held effective service upon an

agent of a corporation. *See Hanson and Morgan Livestock, Inc. v. B4 Cattle Co.*, No. 5:07-cv-00330, 2007 WL 4305606, at *6 (S.D. W. Va. Dec. 7, 2007). There is no reason to depart from that holding in this case. Service was effective on April 29, 2011. NETL was required by 28 U.S.C. § 1446(b) to remove its case to federal court no later than May 29, 2011, if at all. NETL failed to do so, and as such, Plaintiff's motion to remand for untimely removal is meritorious.

However, pursuant to the following discussion, the Court refuses to remand this action to state court. Instead, the case must be dismissed, and the motion to remand [Docket 6] is therefore **DENIED**.

### D. *Sua Sponte Subject Matter Jurisdiction Inquiry*

Apart from the above analysis, the Court must also satisfy itself that subject matter jurisdiction is appropriate in order to maintain this suit in federal court. As mentioned, "a federal court's jurisdiction upon removal under § 1442(a)(1) is derivative of the state court's jurisdiction." *See, e.g.*, *Palmer v. City Nat'l Bank of W. Va.*, 498 F.3d 236, 245-46 (4th Cir. 2007); *Kasi v. Angelone*, 300 F.3d 487, 504 n.6 (4th Cir. 2002); *see also In re Backer*, No 10-Civ.-862, 2010 WL 2816789, at *9 (S.D.N.Y. July 16, 2010) (collecting cases). Hence, to discern its subject matter jurisdiction, the Court looks to the subject matter jurisdiction of the state circuit court.

Before venturing further into this analysis, however, it is necessary to recognize that Plaintiff's claims of employment discrimination against NETL based on his age must be brought pursuant to Title VII and the ADEA alone. In no uncertain terms, the Supreme Court has held that Congress intended Title VII to constitute the exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829, 835 (1976). To the extent that Title VII may not completely foreclose Plaintiff's invocation of state discrimination law, the ADEA certainly does. Similar to the Supreme Court's holding regarding the exclusiveness of Title VII, the Fourth Circuit has unequivocally stated that "the ADEA provides the exclusive judicial remedy

9

for claims of age discrimination." *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir. 1989) (citing *Platt v. Burroughs Corp.*, 424 F. Supp. 1329, 1340 (E.D. Pa.1976)). Plaintiff is therefore limited to asserting these two federal statutory causes of action to proceed in either state or federal court.

As a matter of law, the state circuit court does not possess subject matter jurisdiction over Plaintiff's Title VII and ADEA claims for two reasons. First, Plaintiff failed to exhaust his administrative remedies prior to filing suit in Kanawha County Circuit Court. Second, the United States is not susceptible to suit in state court for alleged violations of Title VII or the ADEA because it has not so waived its sovereign immunity.

The Fourth Circuit has set forth the standard regarding exhaustion in the context of Title VII:

> Before a plaintiff may file suit under Title VII . . . , he is required to file a charge of discrimination with the EEOC. *See* 42 U.S.C.A. § 2000e-5(f)(1) (West 2003) (Title VII). Title VII establishes two possible limitation periods for filing a discrimination charge with the EEOC. *See* 42 U.S.C.A. § 2000e-5(e)(1). "The basic limitations period is 180 days after the alleged unlawful employment practice. However, the limitations period is extended to 300 days when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998).

*Jones v. Calvert Gp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). There is no indication that Plaintiff pursued any remedy with a state agency prior to filing suit, and it therefore appears that he was required to file his Title VII claim with the EEOC no later than 180 days after the occurrence of the alleged discrimination, or sometime around February 2010.[1] In contrast to Title VII, federal employees complaining of age discrimination do "not have to seek relief from the employing agency or the EEOC at all." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 6 (1991). Rather, federal employees may pursue either of two options to bring an age discrimination claim under the ADEA. First, "[a]n individual may invoke the EEOC's administrative process [which is the same as for Title VII, above] and then file a civil action

---

[1] This date is derived from the allegation in the complaint that Plaintiff received a letter from NETL in August 2009 indicating that Plaintiff's candidacy was no longer being considered.

in federal district court if he is not satisfied with his administrative remedies." *Id.* at 5-6. Second, "[a] federal employee complaining of age discrimination . . . can present the merits of [his claim] to a federal court in the first instance." *Id.* at 6. However, where an individual alleging age discrimination has not filed a complaint with the EEOC, he must give no less than thirty days' notice to the EEOC of his intent to file such an action, and this notice must be received within 180 days of the date when the alleged unlawful practice occurred. *See* 29 U.S.C. § 633a(d). Therefore, at a minimum under the ADEA, Plaintiff must have notified the EEOC of his intent to file suit against NETL no later than February 2010. The effect of a failure to so notify the EEOC is quite serious:

> Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim. *See Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 138-40 (4th Cir. 1995) (holding that removal of Title VII action was improper because plaintiff's failure to exhaust administrative remedies deprived the federal courts of subject matter jurisdiction). The same is true of claims made under the ADEA. *See* 29 U.S.C.A. § 626(d); *Vance v. Whirlpool Corp.*, 707 F.2d 483, 486-89 (4th Cir. 1983) (holding that plaintiff's failure to wait 60 days after filing federal administrative charge before bringing suit in federal district court deprived district court of subject matter jurisdiction).

*Jones*, 551 F.3d at 300-01. The United States argues that Plaintiff failed to file any charge with the EEOC at any point. The Magistrate Judge acknowledged as much:

> [Plaintiff] failed to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). ECF No. 4, at 2-3. This contention is supported by the Declaration of Frank Vaccarella, Attorney Advisor for the Department of Energy, who consulted with Nancy Vargas at NETL; both confirm that the plaintiff did not file a discrimination complaint with either agency. ECF No. 3-1, at 1-2. The plaintiff does not dispute this contention that he did not pursue his administrative remedies.

(Docket 10 at 4.) At no point in his 37-page objections to the PF&R does Plaintiff so much as allege that he complied with the statutory prerequisites to filing suit pursuant to Title VII or the ADEA. As such, no court—state or federal—has subject matter jurisdiction to entertain this suit.

The state circuit court also lacks subject matter jurisdiction because the United States has not waived its sovereign immunity to be sued pursuant to these statutes in state court. The Fourth Circuit recently addressed the federal government's amenability to suit under Title VII. In *Bullock v. Napolitano*, the Fourth Circuit held that although congressional silence on the subject of concurrent jurisdiction in the context of Title VII permits an inference that state courts may adjudicate Title VII claims involving private employers, *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990), no such inference may be drawn with respect to the federal government as an employer. 666 F.3d 281, 284-85 (4th Cir. 2012).

The court of appeals recognized, as did the Supreme Court in *Yellow Freight*, that Title VII is silent on whether state courts may hear suits to enforce Title VII rights. The *Yellow Freight* Court instructed that, at least in the case of private employers, Title VII's silence must be resolved in favor of concurrent jurisdiction. 494 U.S. at 823. In the Fourth Circuit's words:

> [*Yellow Freight*] recognized a *presumption* that state courts are competent to adjudicate claims under federal law. [Then], it noted that Title VII, while authorizing suits in United States courts and remaining "completely silent" about suits in state courts, did not rebut *this presumption* by affirmatively divesting state courts of "their presumptively concurrent jurisdiction."

666 F.3d at 285 (emphasis in original). The Fourth Circuit then held that where the United States is a named defendant, there exists no presumption of concurrent jurisdiction. Instead, "[t]he United States has sovereign immunity from such suits and any waiver of that immunity must be 'unequivocally expressed' in a statutory provision, which the courts must construe in favor of the United States." *Id.* (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Title VII's silence regarding state court jurisdiction, therefore, is insufficient to waive sovereign immunity whenever, as here, the federal government is a defendant. *Id.* at 285-86. Thus, state courts lack subject matter jurisdiction to hear Title VII cases against the United States and its agencies.

Plaintiff's ADEA claim must meet a similar fate. 29 U.S.C. § 633a relates to age discrimination in the specific context of federal employment. It provides that "[a]ny person aggrieved may bring a civil action in *any Federal district court* of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." 29 U.S.C. § 633a(c) (emphasis added). This provision is in contrast to the enforcement provision applicable to private employers: "Any person aggrieved may bring a civil action in *any court* of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." § 626(c)(1) (emphasis added). The analysis is therefore much simpler in the ADEA context. Congress clearly intended exclusive federal jurisdiction when the United States or its agencies are sued for alleged violations of the ADEA. The reasoning behind *Bullock* applies more forcefully to federal employment cases under the ADEA, and the Court therefore finds that state courts do not possess subject matter jurisdiction to adjudicate such claims.

Based on the foregoing discussion, the state circuit court lacks subject matter jurisdiction for two reasons. Plaintiff failed to notify the EEOC of his intent to sue. More importantly, regardless of Plaintiff's administrative actions in this case, if any, the United States has not waived its sovereign immunity, and it cannot therefore be required to answer in state court. Upon removal pursuant to 28 U.S.C. § 1442(a), this Court acquires the subject matter jurisdiction of the state court from which the case was removed. Since the state court possessed no subject matter jurisdiction, neither does this Court. In light of the foregoing, the United States' motion to dismiss pursuant to Rule 12(b)(1) is **GRANTED**, though for reasons discussed above. *See Bullock*, 666 F.3d at 285 (upholding dismissal in similar circumstances).

### III. CONCLUSION

The PF&R is **ADOPTED** insofar as it recommends dismissal of this action; the government's motion to dismiss [Docket 4] is **GRANTED**; Plaintiff's motion to remand [Docket

6] is **DENIED**; and the complaint [Docket 1-1] and amended complaint [Docket 6] are **DISMISSED**.

    **IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

    ENTER:    March 30, 2012

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE